# United States Court of Appeals for the Federal Circuit

04-1103

STEVEN M. HOFFER,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Appellee,

and

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant-Appellee,

and

ARIBA INCORPORATED,

Defendant-Appellee.

Steven M. Hoffer, of San Diego, California, pro se.

I. Neel Chatterjee, Orrick Herrington & Sutcliffe, LLP, of Menlo Park, California, for defendant-appellee Microsoft Corporation. On the brief was Joseph T. Jakubek, Klarquist Sparkman, LLP, of Portland, Oregon. Of counsel was Isabella Fu, Microsoft Corporation, of Redmond, Washington.

Charles K. Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of San Francisco, California, for defendant-appellee International Business Machines Corporation. With him on the brief were Robert W. Stone and W. Paul Schuck.

Neil A. Smith, Howard, Rice, Nemerovski, Canady Falk & Rabkin, P.C., of San Francisco, California, for defendant-appellee Ariba, Incorporated.

Appealed from: United States District Court for the Northern District of California

Judge James Ware

# United States Court of Appeals for the Federal Circuit

04-1103


STEVEN M. HOFFER,

                         Plaintiff-Appellant,

          v.

MICROSOFT CORPORATION,

                         Defendant-Appellee,

          and

INTERNATIONAL BUSINESS MACHINES CORPORATION,

                         Defendant-Appellee,

          and

ARIBA INCORPORATED,

                         Defendant-Appellee.


_____

DECIDED:  April 22, 2005

_____


Before NEWMAN, BRYSON, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed PER CURIAM.  Opinion concurring in the judgment filed by <u>Circuit Judge</u>  NEWMAN.

PER CURIAM.

Steven M. Hoffer appeals the summary judgment of the United States District Court for the Northern District of California,[1] holding that defendants Microsoft Corporation, International Business Machines Corporation, and Ariba Incorporated do not infringe claim 21 of United States Patent No. 5,799,151 (the '151 patent) and that claim 22 of said patent is invalid for indefiniteness. We reverse the judgment of invalidity on the ground of indefiniteness, affirm the claim construction of the "whereby" clause, do not reach the remainder of the claim construction, and affirm the judgment of non-infringement.

*Standards of Review*

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Plenary review is given to the grant of summary judgment, to determine whether the law was correctly understood and correctly applied. See, e.g., Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH, 139 F.3d 877, 880 (Fed. Cir. 1998). Summary judgment may properly be granted on questions of fact when no reasonable jury could reach a contrary verdict, even after drawing all reasonable factual inferences in favor of the non-movant. See, e.g., Vivid Technologies., Inc. v. Am. Science & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999).

Issues of the meaning and scope of patent claims are reviewed for correctness, as a matter of law. Markman v. Westview Instruments Corp., 517 U.S. 370, 372 (1996). Invalidity for claim indefiniteness is also deemed to be a matter of law and receives plenary review. See Allen Eng'g Corp. v. Bartell Indus. Inc., 299 F.3d 1336, 1344 (Fed. Cir. 2002).

_____

1   Hoffer v. Microsoft Corp., No. 01-CV-20731 JW (N.D. Ca. Nov. 24, 2003).

04-1103                                                    2

The denial of discovery under Fed. R. Civ. P. 56(f) is reviewed for abuse of discretion, applying the procedural law and discovery rules of the regional circuit, here the Ninth Circuit.  See United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002); Vivid Technologies, 200 F.3d at 807.  A court is deemed to have abused its discretion when it has made an error in law, a clear error of fact, or a clear error of judgment in weighing the relevant factors.  See Monsanto Co. v. McFarling, 302 F.3d 1291, 1296 (Fed. Cir. 2002).

***The Patented Invention***

The '151 patent, entitled "Interactive Electronic Trade Network and User Interface," is directed to an apparatus and method by which remote users of computer terminals obtain data concerning economic activity from an index, and interactively post and receive messages concerning economic topics.  The '151 patent specification describes the invention as "providing intercomputer communication for implementing collaborative messaging between two or more users that desire to read or exchange messages on any indexed topic of economic activity . . . ."  Column 6, lines 60-63.

Claims 21 and 22 are at issue.  Claim 21 follows, showing in bold typeface the terms whose construction was in dispute:

> 21.     A method of **messaging** among at least two **remote user terminals ("RUTs")** in addition to a **host computer ("Host")** that uses communication software and hardware to connect to a communication network that supports asynchronous transport mode and serial data transmission, said Host serving as a central messaging information center that provides a **plurality of RUTs** with data in an integrated application program interface ("IAP") that coordinates the operation for said Host's other sub-systems that comprise a programmable application ("PA") supporting IAP menu functions, system commands, and store-and-forward messaging, an index system reflecting at least one published index that divides broad economic activity into mutually exclusive numbered topics that are used routinely in public and private

sectors, **a memory** configured to correspond to said index system using an operating system, said PA's configuration editor for storage, and PA files, and said method comprises the steps of:

storing in said Host's memory, file capacity calibrated to each subdivision of said index system;

**modifying said Host's memory**, using said PA to store in a complete series those **topic boards** identified by multiple-digit numbers that match all multiple-digit numbers in said index system;

storing inside said IAPI sufficient logical progressions of menus with commands for a **user** at any of said plurality of RUTs to select from said topic boards and enter a topic board matching an index number therein by entering input associated with said index number;

and establishing communications over said network between said Host and said plurality of RUTS to enable said PA to control said Host's processing of said RUTs's commands, and transmit over multiple lines messages and data on a selected topic board;

**whereby** a trade network supports users at said plurality of RUTs who are each guided by said IAPI to select an economic activity, to identify that index topic that corresponds to said activity, to enter that topic board dedicated to said topic, and who are collectively able to concurrently engage in **interactive** data messaging on said topic boards.

Mr. Hoffer challenges the district court's construction and definition of several claim terms. We review only the construction of the "whereby" clause, for the "interactive" limitation therein suffices to support the district court's finding of noninfringement.

### The "Whereby" Clause

Mr. Hoffer states that the district court erred in holding that the "whereby" clause limits the claims, pointing out that the Federal Circuit has held that "a whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited." Minton v. Nat'l Ass'n of Securities Dealers, Inc., 336 F.3d 1373, 1381 (Fed. Cir. 2003). It is correct that a "whereby" clause generally states the result of the patented process. However, when the "whereby" clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention.

Mr. Hoffer proposes that with elimination of the "whereby" clause, claim 21 would not require that the network have the capability of interactive data messaging among users of the system. He explains that collaborative messaging between two or more users may indeed be implemented by adaptation of known sub-systems to his multimode messaging and conferencing on indexed topics of trade, but that interactive messaging is not required by his invention. He argues that since the whereby clause does not state the mechanics of how to update topic board files or store menu files for navigation, or show what enables host programmable applications to transmit to network services, the whereby clause simply describes the overall objective but does not limit the claim to interactive data messaging.

The district court held that such a construction would be contrary to the fundamental invention, which the specification describes as interactive data messaging. The whereby clause describes a network of users at multiple remote user terminals who are "collectively able to concurrently engage in interactive data messaging." This capability is more than the intended result of a process step; it is part of the process itself. This interactive element is described in the specification and prosecution history as an integral part of the invention. The "Summary of the Invention" recites that "[f]rom a remote terminal, the user would enter selected topic boards on a Host Terminal System ('Host System') to address messages to, and receive messages from, other intended users." Col. 6, lines 64-67. Thus, the users communicate with each other. The prosecution history is in accord. Mr. Hoffer points to an amendment during prosecution which made the disclaimer that "newly added [patent claim 21] is an independent method claim . . . that satisfies the Examiner's Statement by solely teaching methods distinct from real-time messaging." Amendment, September 29, 1997.

However, there is a difference between real-time messaging and interactive messaging, which can occur in real time or asynchronously.

We confirm the district court's construction of the "whereby" clause as requiring interactive data messaging, and that claim 1 is thereby limited to a method that provides interactive date messaging.

### Data Messaging

Mr. Hoffer accepts that if the "whereby" clause is viewed as a claim limitation, literal infringement cannot lie because the accused method, called the Universal Description Discovery and Integration system (UDDI), does not permit interactive data messaging. He then proposes infringement under the doctrine of equivalents. The district court granted summary judgment of non-infringement under the doctrine of equivalents, applying the "all-elements rule" as set forth in <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 40 (1997).

The court held that a system whereby information can only be posted, as in the accused system, cannot be equivalent to a system where the users can also communicate with each other. We agree that this interactive capability is a material element of the claimed invention, and that no equivalent thereof exists in the UDDI. Thus the judgment of noninfringement under the doctrine of equivalents is affirmed.

### Other Claim Terms

Because the construction of the whereby clause is sufficient to sustain the district court's finding of noninfringement, we do not review the court's construction of the other disputed claim terms.

*Validity of Claim 22*

Claim 22 as written was dependent from claim 38.  The district court held claim 22

invalid for "indefiniteness" because there is no claim 38 in the issued patent:

> 22.     A method in accordance with claim 38,  wherein said index system is
> at least:
>          one indexed [sic] of classes of goods and one index of classes of
> industrial establishments . . . .

This error in dependency of claim 22 is apparent on the face of the printed patent, and the

correct antecedent claim is apparent from the prosecution history.  The patent application

as filed and as prosecuted contained independent claim 38 and dependent claim 39.

During prosecution both claim 38 and claim 39 were allowed, but some earlier claims were

cancelled.  In preparation for printing, the examiner renumbered claim 38 as claim 21, and

renumbered claim 39 as claim 22.  However, the examiner did not make the corresponding

change in the text of claim 22.  Thus although claim 39 was renumbered as claim 22, the

internal reference to claim 38 was not changed.  The district court found that the PTO was

responsible for the error.  Mr. Hoffer obtained a certificate of correction in accordance with

35 U.S.C. §254 after this action was filed, changing the antecedent claim "38" to "21."  The

district court declined to accept the correction, deeming it tardily made.

The district court stated that it was powerless to correct the error.  We do not agree

that such correction exceeds the judicial power.  Absent evidence of culpability or intent to

deceive by delaying formal correction, a patent should not be invalidated based on an

obvious administrative error.  The defendants did not state that they were prejudiced, or

even confused, by the error.  The district court held that it has no authority to correct or

ignore even a typographical error in a patent.  That is inaccurate.  When a harmless error in

a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents. See Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1356-57 (Fed. Cir. 2003). Here the error was apparent from the face of the patent, and that view is not contradicted by the prosecution history. We conclude that claim 22 was improperly invalidated.

However, claim 22, which is more limited in scope than claim 21 from which it depends, cannot be infringed when the broader claim 21 is not infringed. Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989). Thus although we reverse the holding of invalidity of claim 22, claim 22 is not infringed by the UDDI systems.

## *Discovery*

Mr. Hoffer appeals the denial of his request for discovery under Fed. R. Civ. P. 56(f), which he states was needed in order to respond to the defendants' motions for summary judgment. He states that although the district court relied on various witnesses' evidence to resolve disputed facts material to infringement, he was denied the opportunity to take the depositions of those witnesses and to learn how the accused instrumentalities really operate. Mr. Hoffer states that details on the data storage and data process tiers of the accused product were in the exclusive control of the defendants and not otherwise knowable.

The district court ruled that the requested discovery could not avert the decision of non-infringement. The defendants point out that it was undisputed that the UDDI system does not allow users to communicate interactively with each other by posting messages. The district court concluded that this undisputed fact warranted the grant of summary

judgment, and that the requested details on data storage were not relevant to this fundamental claim limitation, and could not change the result. We agree. See <u>Nidds v. Schlinder Elevator Corp.</u>, 113 F.3d 912, 921 (9th Cir. 1996) (the party seeking discovery must show that the evidence sought could preclude the grant of summary judgment); <u>United States for Use and Benefit of Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.</u>, <u>Ltd.</u>, 74 F.3d 972, 975 (9th Cir. 1996) (same). The district court did not abuse its discretion in denying the Rule 56(f) motion for additional discovery.

### *Other Claims*

Mr. Hoffer states that the district court improperly invalidated all of the patent claims, including claims not at issue or not yet litigated. The district court entered final judgment in favor of the defendants "on all of the claims, as well as the counterclaims for declaratory judgment of non-infringement and invalidity." From its context, this statement clearly refers to the "claims" of the pleadings, not the "claims" of the '151 patent. The only patent claims placed at issue were claims 21 and 22; the district court opinion does not discuss any other patent claims, and no other patent claims were adjudicated.

### *Conclusion*

We affirm that claims 21 and 22 are not infringed. The invalidation of claim 22 for indefiniteness is reversed.

Each party shall bear its costs.

### AFFIRMED IN PART, REVERSED IN PART

# United States Court of Appeals for the Federal Circuit

04-1103

STEVEN M. HOFFER,
Plaintiff-Appellant,
v.

MICROSOFT CORPORATION,
Defendant-Appellee,
and

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant-Appellee,
and

ARIBA INCORPORATED,
Defendant-Appellee.

NEWMAN, Circuit Judge, concurring in the judgment.

I agree with the court's judgment as to both infringement and validity. I write separately to express my concern at the court's decision not to review the entirety of the appealed claim construction, my colleagues on the panel declining to review any appealed aspect of the district court's construction other than whether the "whereby" clause limits the claim. Supreme Court precedent and practical appellate obligation require our review of the appealed subject matter when that subject matter may be relevant to further review or other proceedings involving the patent. The claim construction was fully litigated and fully

decided by the district court, and several aspects thereof are challenged on this appeal. All of the disputed aspects of the district court's claim construction were fully briefed and fully argued; they warrant appellate resolution, not appellate silence.

The Supreme Court has explained that it is inappropriate for the Federal Circuit to decline appellate review of patent issues that were decided by the district court, when these issues may arise on further appeal to the Court or in other litigation of the same patent. In Cardinal Chemical Co. v. Morton International, Inc, 508 U.S. 83 (1993), the Court held that if the issue of validity was decided by the district court it could be considered on appeal to the Court, and thus requires intervening review by the intermediate Federal Circuit:

> The Federal Circuit's determination that the patents were not infringed is subject to review in this Court, and if we reverse that determination, we are not prevented from considering the question of validity merely because a lower court thought it superfluous.

Id. at 97.

In the accompanying opinion this court construes only one claim term, albeit in a manner that negates infringement. However, as the Court teaches in Cardinal Chemical, this does not moot the disputed issues of construction of other claim terms, for those issues could be raised on further appeal or in further litigation. In this case the district court relied not only on the "whereby" clause on which this panel relies, but also on the construction of other terms in other clauses; and in turn, the inventor Hoffer has presented cogent arguments for modification of the district court's construction of some other terms. The Federal Circuit need not and should not truncate our review when disputed aspects of the district court's claim construction can be relevant to further enforcement of the patent and possible challenges to validity as well as infringement.

04-1103                                            2

On this appeal, Mr. Hoffer argues that the district court's claim construction was incorrect in several ways. Refusal to review the claim construction essentially erases this effort, by the parties and the district court, to establish the scope of the patent. Our refusal to reach the major portion of the district court's claim construction does not say whether we deem it correct or incorrect. The Court in Cardinal Chemical criticized the Federal Circuit's earlier practice of refusing to review the district court's decision on the issue of validity. The Court pointed out that such inaction leaves unresolved, or clouded, important rights affecting the patentee, the alleged infringer, and the public:

> Indeed, as Morton's current predicament illustrates, see *supra*, at 1971, the Federal Circuit's practice injures not only the alleged infringer and the public; it also may unfairly deprive the patentee itself of the appellate review that is a component of the one full and fair opportunity to have the issue adjudicated correctly.

508 U.S. at 101.

This court neither vacates nor reviews the rest of the construction of Mr. Hoffer's claims. Should there be error by the district court it now rests unreviewed; yet no one can confidently rely on a claim construction which this court does not reach. Neither the patentee nor the public is served by such uncertainty, as the Supreme Court recognized:

> The Federal Circuit's practice denies the patentee such appellate review, prolongs the life of invalid patents, encourages endless litigation (or at least uncertainty) over the validity of outstanding patents, and thereby vitiates the rule announced in Blonder-Tongue.

Id. at 102 (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971)).

It is not a tenable excuse that the technology is complicated and appellate review difficult; indeed, these are reasons for resolving the disputed aspects, not reserving them for future redetermination. The Court in Cardinal Chemical made clear that when the

04-1103                                                  3

district court has decided issues that may be relevant to the future of the patent, and those issues are appealed, our obligation is to review the district court's decision. This claim construction has been tried and has been appealed. It is our responsibility to decide the appeal. No sound reason supports the court's departure from this obligation in this case, and the logic of Cardinal Chemical prohibits it.